IN THE UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

IDANIA PALACIOS

    Plaintiff,

CIVIL ACTION NO. 0:13-CV-61541-WPD

vs.

HARTMAN and TYNER, INC.
d/b/a MARDI GRAS GAMING,
a Florida Corporation

    Defendant.
_____/

**DEFENDANT HARTMAN & TYNER, INC. D/B/A MARDI GRAS GAMING'S
MOTION FOR FINAL SUMMARY JUDGMENT
AND
INCORPORATED MEMORANDUM OF LAW**

Defendant, HARTMAN & TYNER, INC. d/b/a Mardi Gras Gaming ("Mardi Gras" or "Defendant"), by and through its undersigned counsel, and pursuant to Rule 56 Fed. R. Civ. P., moves this Court for an order granting summary judgment in its favor against Plaintiffs' "tip credit" claim under the Fair Labor Standards Act ("FLSA"). There is no genuine issue of material fact and Mardi Gras is entitled to judgment as a matter of law. In support, Mardi Gras has filed and incorporates herein its separate Statement of Material Facts, along with its Notice of Filing certain affidavits and deposition excerpts, and states:

### I.   INTRODUCTION

1. Plaintiffs were formerly employed as Poker Dealers in the Poker Room at the Mardi Gras casino. They argue that Mardi Gras was not entitled to take a "tip credit" against their wages because the tip pool in which they participated included Poker Room Floor Representatives and Cashiers. (DE #1, ¶11)

2. The <u>only</u> issue raised by Plaintiffs' Complaint is whether the Floor Representatives and Cashiers are "tipped employees" as defined in 29 U.S.C. §203(t):

> "Tipped employee means any employee engaged in an occupation in which he customarily and regularly receives for than $30 a month in tips.

3. The Mardi Gras Floor Representatives and Cashiers meet this test as a matter of law because they customarily and regularly receive more than $30 a month in tips, independent of any tips received from the tip pool. The tip pool was therefore valid, and Mardi Gras is entitled under federal law to take the tip credit against Plaintiffs' wages.

## II.   MOTION FOR SUMMARY JUDGMENT AND MEMORANDUM OF LAW

### Summary Judgment Standard

4. Summary judgment is appropriate when the movant shows that there is no genuine dispute as to any material fact and that the movant is entitled to judgment as a matter of law. Fed. R.Civ.P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317 (1986).   Issues of fact are "'genuine" "only if a reasonable jury considering the evidence presented could find for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249; (1986).

5. As the moving party, a defendant is entitled to judgment as a matter of law when the plaintiff fails to make a sufficient showing of an essential element of the case on which plaintiff will bear the burden of proof at trial. *Celotex*, 477 U.S. at 322. *See also, Denney v. The City of Albany*, 247 F. 3d 1172 (11th Cir. 2001). Moreover, when – as here – the non-moving party bears the burden of proof on an issue, the moving party is not required to support its motion with affidavits or other material negating the non-moving party's claim. *Id.* at 323. Instead, the moving party simply may "point out to the district court that there is an absence of evidence to support the nonmoving party's case." *Id.* at 325. The plaintiff party must go beyond

2

the pleadings and by his own affidavits, or by the depositions, answers to interrogatories, and admissions on file, designate "specific facts showing there is a genuine issue for trial." *Id.* at 324.

6. If the party seeking summary judgment meets the initial burden of demonstrating the absence of a genuine issue of material fact, the burden shifts to the non-moving party to come forward with sufficient evidence to rebut this showing with affidavits or other relevant and admissible evidence. *Avirgan v. Hull*, 932 F2d. 1572, 1577 (11th Cir. 1991).

### Tip Pooling

7. Employers may pay less than the otherwise-applicable minimum wage to "tipped employees." 29 U.S.C. § 203(m). A "tipped employee" is "any employee engaged in an occupation in which he customarily and regularly receives more than $30 a month in tips." 29 U. S.C. § 203(t).

8. A "tip" is "a sum presented by a customer as a gift or gratuity in recognition of some service performed for him." 29 C.F.R. § 52. A tip need not be in cash; the term "tip" includes payment via cash equivalents such as poker chips. 29 C.F.R. § 53.

9. Tips must be "actually received by an employee as money belonging to the employee" in order to counted in determining whether the person is a "tipped employee" for tip credit purposes. 29 C.F.R. § 52. In addition to tips received directly from customers, tips received by an employee from another employee are included in the determination. *See,* 29 C.F.R. 531.54 ("Where employees practice tip splitting, as where waiters give a portion of their tips to the busboys, both the amounts retained by the waiters and those given the busboys are considered tips of the individuals who retain them, in applying the provisions of [29 U.S.C. § 203(m) and (t)].") Mandatory tip pooling is authorized by the FLSA so long as the employer notifies employees of the required contribution, only takes a tip credit for the amount of tips each

employee receives, and does not retain any of the employees' tips. 29 U.S.C. § 203(f); 29 C.F.R. § 54.

10. The only issue identified in Plaintiffs' Complaint is whether Mardi Gras Floor Representatives and Cashiers are "tipped employees" eligible to participate in the Poker Room tip pool. (DE #1, ¶11) As demonstrated in Mardi Gras' incorporated Memorandum of Law and contemporaneously-filed Statement of Material Facts, they are "tipped employees" as a matter of law because they customarily and regularly receive more than $30 a month in tips. Accordingly, Mardi Gras is entitled to final summary judgment against Plaintiffs.

### III. ARGUMENT

11. Plaintiffs were formerly employed as Poker Dealers in the Mardi Gras Poker Room. During their employment, they were required to contribute 10% of their tips into a pool that was shared with other members of the Poker Room employee team. Plaintiffs complain that Mardi Gras was not entitled to take a tip credit against their cash wages because Poker Room Cashiers and Floor Representatives participated in and allegedly invalidated the tip pool. There is no dispute that Mardi Gras met all other requirements of a valid tip pool.

12. As attested by its Human Resources Director, Mardi Gras' business includes a 30-table Poker Room in which guests play poker against each other. The poker room is open 18 hours/day on weekdays and 20 hours/day on weekends. The Poker Room employee team consists of Poker Dealers, Host/Hostess (known within the industry as the "Brush"), Cashiers, and Floor Representatives (known within the industry as the "Floor," "Floorman," "Floor woman," or "Floor Supervisor"), each of whom performs specified customer service duties within the poker room. Until the position was phased out, the Poker Room employee team also included Chip Runners. Each shift of poker room employees is supervised by a Shift Manager,

who reports to the Poker Room Director.

13. The Mardi Gras Poker Room is a customer-facing entertainment business. Poker Room employee members all work together to get customers seated in a game, make sure they're happy, and keep the games going. Each employee in the Poker Room tip pool has substantial customer interaction and customer service responsibilities, which are an essential function of the position. Floors (and when employed, Chip Runners) are typically in the Poker Room directly interacting with customers over 90% of the time. The Brush interacts with customers approximately 95% of the time, and about 90% of the Cashier's time is devoted to customer service tasks. As is common in customer service businesses, Poker Room customers frequently and customarily elect to tip the service personnel who directly assist them, including the Brush, Cashier, Floor and Chip Runner in addition to the Poker Dealers. It is therefore not surprising that each of these employees receives more than $30 per month from a source other than the tip pool.

14. As permitted by 29 C.F.R. § 54, Poker Dealers contribute 10% of their tips to a tip pool that is shared with the Brush, Cashier, Floor and Chip Runner Positions. Each of these employees is a "tipped employee" as defined in the FLSA: each individual customarily and regularly receives more than $30.00 each month independent of the funds received from the tip pool. In fact, it is customary within the Florida poker industry for such employees to receive tips from customers.

15. It is also customary, both at Mardi Gras and within the Florida poker industry generally, for poker dealers to directly and individually give tips to brushes, cashiers, and chip runners, in recognition of the service they provide to poker dealers. At Mardi Gras, the services provided to customers by other members of the tip pool directly benefit Poker Dealers by

keeping customers happy, seated at the game and playing poker, thus generating tips for the Dealers. Even after the tip credit is taken, Poker Dealers earn far above the minimum wage. Each Plaintiff in this case earned between $15.00 and $25.00 hour when employed as a Poker Dealer at Mardi Gras.

16. It is indisputable that the Cashiers and Floors in the Mardi Gras Poker Room are engaged in occupations in which they customarily and regularly receive more than $30 a month in tips. The Cashiers and Floors are thus "tipped employees" under the FLSA as a matter of law. *See, Kilgore v. Outback Steakhouse of Florida, Inc.*, 160 F3d 294, 301 (6th Cir. 1998) (tip-pool participant who meets the 29 U.S.C. § 203(t) definition of "tipped employee" automatically satisfies requirements of 29 U.S.C. § 203(m)).

17. In other cases not presented herein, where the only tips received by an employee are generated by the tip pool, the courts may review other factors, such as the employees' duties, to determine whether they perform customer service functions and thus should be considered a "tipped employee." *See, Rubio v. Fuji Shush & Teppani, Inc.*, 6:11-CV-1753-ORL-37, 2013 WL 230216 (M.D. Fla. Jan. 22, 2013); *Frebes v. Mask Restaurants, LLC*, 13-C-3473, 2013 WL 5290051). Courts also may consider evidence of a common industry practice of tipping that occupation. *Turner v. Millenium Park Joint Venture, LLC*, 767 F.Supp.2d 951, 955, ft. 5 (N.D. Ill. 2011)(citing as support DOL Opinion Letter, 2009 WL 649014 (Jan. 15, 2009.) Neither factor applies in this case. The Mardi Gras Cashiers and Floors are indisputably "tipped employees" because they receive more than $30.00 per month in tips, independent of the tip pool, thus distinguishing this case from *Wajcman v. Investment Corp. of Palm Beach*, 620 F.Supp. 2d 1353, 1355 and 1360 (S.D. Fla. 2009), in which the poker room floor supervisors "did not normally receive tips" and whose "primary responsibility" – unlike the Floor

Representatives in the Mardi Gras Poker Room – was to "supervise employees on the cardroom floor." At Mardi Gras, that function is performed by Shift Managers. Floors have no supervisory responsibilities, and are expected to concentrate on customer service, while Cashiers have substantial and direct customer interaction.

## IV.   CONCLUSION

WHEREFORE, the Defendant, HARTMAN & TYNER, INC. ("Mardi Gras") respectfully moves this Honorable Court for the entry of an Order entering final summary judgment in its favor and for such other and further relief as this Court may deem just and proper.

*[signature]*

MARTIN P. McDONNELL, Esq.
Florida Bar Number 301728
Rutledge Ecenia, P. A.
Post Office Box 551
Tallahassee, Florida 32302-0551
(850) 681-6788
*ATTORNEYS FOR DEFENDANT
HARTMAN AND TYNER, INC.
D/B/A MARDI GRAS GAMING*

## CERTIFICATE OF SERVICE

**I hereby certify** that on November 7, 2014, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF. I also certify that the foregoing document is being served this day on all counsel of record or pro se parties identified on the attached Service List in the manner specified, either via transmission of Notices of Electronic Filing generated by

CM/ECF or in some other authorized manner for those counsel or parties who are not authorized to receive electronically Notices of Electronic Filing.

*M.P. McDO*
Martin P. McDonnell

**SERVICE LIST**
CIVIL ACTION NO. 0:13-CV-61541-WPD
PALACIOS V. HARTMAN & TYNER, INC.

Chad Levy, Esq.
Law Offices of Levy & Levy, P.A.
300 Southeast 13th Street
Ft. Lauderdale, FL 33316
Telephone: (954)763-5722
Facsimile: (954)763-5723
Email: chad@levylevylaw.com
Method of service: CM/ECF

Christopher Whitelock, Esq.
Whitelock and Associates, P.A.
300 S.E. 13th Street
Fort Lauderdale, FL 33316
Telephone: (954) 463-2001
Facsimile: (954) 463-0410
Email: cjw@whitelocklegal.com
Method of service: CM/ECF