UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
FORT LAUDERDALE DIVISION

CASE NUMBER: 0:13-61541-WPD

IDANIA PALACIOS,

    Plaintiff,

vs.

HARTMAN and TYNER, INC. d/b/a
MARDI GRAS GAMING, A Florida
Corporation,

    Defendant.
_____/

## PLAINTIFFS' RESPONSE TO DEFENDANT'S MOTION FOR SUMMARY JUDGMENT WITH INCORPORATED MEMORANDUM OF LAW

Plaintiffs, pursuant to Fed.R.Civ.P. 56, on behalf of themselves and all others similarly situated, hereby file Plaintiffs' Response to Defendant's Motion for Summary Judgment and Incorporated Memorandum of Law as to Tip Pool Validity only against Defendant, HARTMAN and TYNER, INC. ("Defendant"), and in support thereof, states as follows:

### I.  PRELIMINARY STATEMENT

On July 17, 2013, Plaintiffs filed a complaint against the Defendant, a casino/poker room facility, for violating the Fair Labor Standards Act ("FLSA") based upon tip-pool violations that the Plaintiffs were required to participate in [D.E. #1]. Throughout the course of discovery, it is undisputed, or at the very least there are genuine issues of fact, that the tip pool at issue that was maintained and operated by the Defendant during the Plaintiffs' employment was invalid and therefore illegal under the FLSA. Specifically, the Defendant included "cashiers" in the tip-pool,

Palacios, et al. v. Hartman & Tyner, Inc.
Case No.:  0:13-cv-61541-WPD
Plaintiffs' Response to Motion for Summary Judgment

a non-tipped position, as set forth by the Department of Labor, and this therefore invalidates the tip-pool under the FLSA.

Accordingly, Defendant's Motion for Summary Judgment must be denied.

## II. MEMORANDUM OF LAW

### A. BACKGROUND

Plaintiffs were employed by the Defendant as poker dealers.  Defendant claimed a tip-credit for the Plaintiffs, which allowed the Defendant to compensate Plaintiffs, and all other poker dealers, at an hourly amount less than the federally mandated minimum wage.  In addition to this hourly compensation, based upon the Plaintiffs' service position, Plaintiffs received tips from the Defendant's customers.  These tips were to ensure that Plaintiffs received at least the federally mandated minimum wage amount, despite receiving an hourly rate of less than minimum wage. However, the Defendant operated and maintained a tip pool that required the Plaintiffs to share their tips with cashiers.  These employees performed minimal to no customer services (R-SOF 11).

The cashiers' primary and significant employment function is to exchange the customers' chips for money.  It is not part of the cashiers' duties to interact with the customers other than the exchange for tips and these employees are essentially human ATM machines (R-SOF 11).  The cashiers are locked behind a cage and do not come out of that cage unless the rarest of circumstances (R-SOF 11).  In fact, the Department of Labor has already determined that cashiers locked behind a cage are not to be included in a tip-pool (R-SOF 11).

Nevertheless, the Defendant included the cashiers in the tip-pool.  However, it does not change the fact that these cashiers serve no important customer service function.  They do not

Case 0:13-cv-61541-BB   Document 76   Entered on FLSD Docket 12/01/2014   Page 3 of 12

Palacios, et al. v. Hartman & Tyner, Inc.
Case No.: 0:13-cv-61541-WPD
Plaintiffs' Response to Motion for Summary Judgment

seat customers, or get drinks, or provide service at the table, or do anything on the floor.  All the cashiers do is exchange chips for money (R-SOF 11).

As a result the Plaintiffs, despite receiving less than minimum wage per hour, and working diligently for tips, found themselves not being permitted to retain these tips or share them with only other tipped employees.  Instead, Plaintiffs were sharing their tips with cashiers, who are non-tipped employees.  Therefore, Defendant has maintained and operated and invalid tip-pool under the FLSA.

B.  **SUMMARY JUDGMENT STANDARD**

The Court may grant summary judgment "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). The burden of establishing the absence of a genuine issue of material fact lies with the moving party Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). The Court should not grant summary judgment unless it is clear that a trial is unnecessary, Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986) ("some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact.")  (emphasis in original). Specifically, on a motion for summary judgment, "a Court does not resolve factual disputes or make credibility determinations and must view the facts and inferences in the light most favorable to the party opposing the motion." Big Apple BMW, Inc. v. BMW of North America, Inc., 974 F.2d 1358, 1363 (3d. Cir. 1992), *cert. denied,* 507 U.S. 912 (1993).

The party opposing summary judgment may not simply rely on the pleadings or mere denials of the allegations. Rather, the opposing party must adduce some evidence showing that

Case 0:13-cv-61541-BB   Document 76   Entered on FLSD Docket 12/01/2014   Page 4 of 12

Palacios, et al. v. Hartman & Tyner, Inc.
Case No.:  0:13-cv-61541-WPD
Plaintiffs' Response to Motion for Summary Judgment

material facts are in issue. Anderson, 106 S.Ct. at 2514. The Eleventh Circuit has recently restated the method for allocating burdens in a summary judgment motion. Specifically, in accordance with U.S. Supreme Court precedent;

> The moving party bears the initial burden to show the district court, by reference to materials on file, that there are no genuine issues of material fact that should be decided at trial. Only when that burden has been met does the burden shift to the nonmoving party to demonstrate that there is indeed a material issue of fact that precludes summary judgment.

Clark v. Coats & Clark, Inc., 929 F.2d 604, 608 (11th Cir.1991).  Based upon all of the evidence in the record, Defendant's liability is not subject to material factual issues in dispute that must ultimately be decided at trial. Therefore, Defendant's Motion for Summary Judgment must be denied.

### C. REQUIREMENTS FOR A VALID TIP-POOL UNDER THE FLSA

Under 29 U.S.C. 203(m), an employer is permitted to pay less than minimum wage to employees who receive tips, in what is known as the "tip-credit." The tip-credit allows employers to include in its calculation of a tipped employee's wage the amount that an employee receives in tips up to fifty percent of the minimum wage. Id.  However, in order to have the benefit of the tip-credit, the employer must ensure that (1) the tip-credit employee is informed of the provisions of the tip-credit, and (2) all tips received by the tip- credit employee were retained by the tip-credit employee. Id. The second prong for the tip-credit has one exception: the tip-credit employee's tips may be part of a tip-pool, but only if the tip-credit employees are pooling their tips with other customarily and regularly tipped employees. Id. These two (2) elements for the tip-credit "are strictly construed, and must be satisfied even if the employee received tips at

Palacios, et al. v. Hartman & Tyner, Inc.
Case No.:  0:13-cv-61541-WPD
Plaintiffs' Response to Motion for Summary Judgment

least equivalent to the minimum wage." Chung v. New Silver Palace Restaurant, Inc., 246 F.Supp.2d 220, 229 (S.D.N.Y. 2002).

In determining whether an employee is engaged in an occupation that "customarily and regularly" receives tips, "the focus is properly drawn to the question of whether the employee performs important customer service functions, i.e. does the employee have more than *de minimis* service interaction with customers." Wajcman v. Investment Corp. of Palm Beach, 2008 WL 783741, *3 (S.D.Fla. 2008); see e.g. Kilgore v. Outback Steakhouse of Florida, Inc., 160 F.3d 294 (6th Cir.1998) (restaurant hosts held "tipped employees," noting they perform important customer service function by greeting customers, supplying them with menus, seating them at tables, unlike other restaurant employees like dishwashers, cooks, or off hour employees (janitors) who do not directly relate with customers at all); Dole v. Continental Cuisine, Inc., 751 F.Supp. 799 (E.D.Ark.1990) (upholding mandatory tip pool where servers tipped out solely to a maitre 'd who received no tips directly from customers, and whose responsibilities included setting up dining room, greeting and seating customers, serving first drink to customers, and assisting servers and serving customers as needed). Compare Elkins v. Showcase, Inc., 237 Kan. 720, 704 P.2d 977, 989 (Kan.1985) (nonservice bartenders are not tipped employees because they were located behind wall, and thus had no contact with customers and were not in a position to receive tips).

Additionally, employers may not take advantage of the tip credit unless the employee has been allowed to "retain" all the tips that the employee received. § 203(m).  "Thus, the effect of the language of [§ 203(m)] precludes an agreement between an employer and a 'tipped employee' that any part of tips received by such employee belongs to the employer and must be turned over to the employer." FIELD OPERATIONS HANDBOOK § 30d01(a).  Courts have

Case 0:13-cv-61541-BB   Document 76   Entered on FLSD Docket 12/01/2014   Page 6 of 12

Palacios, et al. v. Hartman & Tyner, Inc.
Case No.:  0:13-cv-61541-WPD
Plaintiffs' Response to Motion for Summary Judgment

interpreted this requirement to mean that an employer is not eligible to take the tip credit, and will be liable for reimbursing an employee the full minimum wage that employee would have earned, if the employer exercises control over a portion of the employee's tips. See Barcellona v. Tiffany English Pub, 597 F.2d 464, 467–68 (5th Cir. 1979) (employees were entitled to receive from their employer the full minimum wage where they were not allowed to keep all of the tips they received) (*citing* Richard v. Marriott Corp., 549 F.2d 303, 304–05 (4th Cir. 1977)); Wright v. U–Let–Us–Skycap Servs., Inc., 648 F.Supp. 1216, 1217 (D.Colo.1986) (agreement that employees turn in all their tip income to the employer, so that employer could pay them the minimum wage from this sum but retain the difference, was in "blatant contravention" of § 203(m)); Marshall v. Krystal Co., 467 F.Supp. 9, 13 (E.D.Tenn.1978) (restaurant could not consider its employees' tips as a portion of their wages where the employees were not permitted to keep all the tips they received); Brennan v. Haulover Shark and Tarpon Club, Inc., 1986 WL 587, at *16 (S.D.Fla. Jan. 27, 1996) (employer lost tip credit when it diverted a portion of employee's tips to a "vacation fund" for long term employees).

Simply stated, should the tip-credit employee have been required by the employer to pool her tips with a non-customarily and regularly tipped employee, or not retain all of her tips, the employer had maintained an invalid tip-pool; the result of which denies the employer the permission to claim a tip-credit for the employee, and entitles the employee to minimum wage for all hours worked for the employer where the tip-pool was utilized. Reich v. Chez Robert, Inc., 28 F.3d 401, 403 (3rd Cir. 1994).

There is no dispute that a tip-credit was claimed for the Plaintiffs in this action, as they worked as poker dealers for Defendant, with a significant portion of their compensation coming from the tips received from customers while dealing. As such, Plaintiffs received less than

Palacios, et al. v. Hartman & Tyner, Inc.
Case No.:  0:13-cv-61541-WPD
Plaintiffs' Response to Motion for Summary Judgment

minimum wage per hour from the Defendant. There is also no dispute that Defendant operated and maintained a tip-pool.  Plaintiffs have brought this action alleging that Defendant maintained an invalid tip-pool by requiring the Plaintiffs, customarily and regularly tipped employees, to disburse a portion of their received tips to non-customarily and regularly tipped employees. Defendant cannot demonstrate that it maintained a valid tip-pool under the FLSA, and therefore, summary judgment must be denied and in favor of Plaintiffs.

### D.  DEFENDANT MAINTAINED AND OPERATED AN INVALID TIP-POOL

A review of the language of the FLSA evidences that it is the employer's burden, not the employee's, to ensure that a proper tip-credit is claimed for the employee.  "If an employer cannot show that the tip pool was distributed solely among customarily and regularly tipped employees, the employer cannot take a tip credit and must pay its employees the full minimum wage under the FLSA."  Guillory v. PF&B Management, 2013 WL 1181439 (S.D.Tex 2013); *citing* Rudy v. Consol. Restaurant Cos., Inc., 2010 WL 3565418, at *3 (N.D.Tex. Aug. 18, 2010) (quoting Wajcman v. Inv. Corp. of Palm Beach, 620 F.Supp.2d 1353, 1356 n. 3 (S.D.Fla.2009)). Thus, the Defendant has the burden of proving that a proper tip-pool has been maintained during the course of the Plaintiffs' employment.

In order to maintain a valid tip-pool, the Plaintiffs should only have been sharing their tips with customarily and regularly tipped employees. 29 U.S.C. 203(m). The definition of a customarily and regularly tipped employee means "any employee *engaged in an occupation* in which he customarily and regularly receives more than $30 a month in tips." 29 U.S.C. 203(t). Under 29 CFR 531.54, an employee who receives tips from a tip-pool is permitted to count those received tips to establish whether they exceed $30 per month.  However, this illogically results in every employee that takes part in the tip-pool becoming eligible, thus making the $30 limit

Palacios, et al. v. Hartman & Tyner, Inc.
Case No.:  0:13-cv-61541-WPD
Plaintiffs' Response to Motion for Summary Judgment

"utterly meaningless." Chan v. Triple 8 Palace, Inc., 2006 WL 851749, FN22 (S.D.N.Y. 2006). To avoid this "absurd result", it is not only whether they receive tips, but also are they engaged in an occupation in which they customarily and regularly receive tips.  Id.  As a result, the fact that an employee received over $30 per month in tips from the tip-pool does not automatically designate them as customarily and regularly tipped employees.

However, the Defendant argues that the cashiers are tipped employees by saying that they receive more than $30 per month in tips directly from customers.  There is one primary and major flaw with this argument as it is not simply whether $30 in tips is received.  Rather, in determining whether an employee is engaged in an occupation that "customarily and regularly" receives tips for purposes of § 203(t), the focus is actually on whether the employee performs important customer service functions.  Wajcman v. Inv. Corp. of Palm Beach, 2008 WL 783741, *3 (S.D. Fla. 2008) citing Kilgore v. Outback Steakhouse of Florida, Inc., 160 F.3d 294 (6th Cir.1998).  Besides the fact that the Defendant cannot point to one form of legal authority that a cashier is properly included in a tip-pool, the job position simply lacks important customer service functions.  The cashiers' primary and significant employment functions include six bullet points of cashier related duties such as "Accurately balances assigned bank" and "Makes exchanges of currency".  It is not part of the cashiers' duties to interact with the customers **other than** the exchange for chips and these employees are nothing more than human ATM machines (R-SOF 11).

In fact, the Department of Labor has already specifically evaluated the cashier position and determined that cashiers are not to be included in a tip-pool. This ruling, against two poker facilities located in Naples and Miami, determined that tellers, who were "behind protective glass and had minimal contact with customers" invalidated the tip-pool and required the facility

Palacios, et al. v. Hartman & Tyner, Inc.
Case No.:  0:13-cv-61541-WPD
Plaintiffs' Response to Motion for Summary Judgment

to pay the dealers for lost pay. (Dept. of Labor Report Case ID: 1519073, P. 3 as Exh. 1). Plaintiffs request that this Court take Judicial (or Official) Notice of the document produced by the DOL.  Fed. R. Evid. 201 provides for Judicial Notice of Adjudicative Facts and enables the Court to take official notice of a fact not subject to reasonable dispute because it can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned.  Agency records, such as the DOL's, are regularly afforded judicial notice. See, e.g., Stengel v. Medtronic Inc., 676 F.3d 1159, 1167 (9th Cir. 2012) (taking judicial notice of fact demonstrated by FDA records because "the accuracy of FDA records cannot reasonably be questioned"), *rev'd on other grounds*, 704 F.3d 1224 (9th Cir. 2013); Funk v. Styker Corp., 631 F.3d 777, 783 (5th Cir. 2011) ("[T]he district court took appropriate judicial notice of publically-available [sic] documents and transcripts produced by the FDA, which were matters of public record directly relevant to the issue at hand."); Krzesniak v. Cendant Corp., 2007 U.S. Dist. LEXIS 18811, at *6-8 (N.D. Cal. Feb. 27, 2007) (taking judicial notice of records produced by the California Department of Fair Employment and Housing).

Similarly here, the cashiers are locked behind a protective cage from the players and are in no way involved with customers other than exchanging chips for money.  The only service the cashier provides is exchanging chips for money, like a human ATM machine.

Q. Okay.  So you are changing money into chips, correct?

A. Yes.

Q. Are you cashing players out as well?

A. Yes.

Q. Anything else you do in terms of the bank in terms of changing and cashing?

A. No.

Palacios, et al. v. Hartman & Tyner, Inc.
Case No.: 0:13-cv-61541-WPD
Plaintiffs' Response to Motion for Summary Judgment

Nesbitt Dep. p. 10, l. 3-10.

The Defendant's own cashier even testified that he did not receive any customer service training for the position.

> Q. Okay. Tell me what training you went through [for a poker cashier].
>
> A. Showed me how to cut the chips properly. You know, how to do any paperwork that needs doing, like the clip boards.

Dep. Palencia, p. 12, 1. 14-18.

> Q. Any other training that you received?
>
> A. Well, they were also telling me about promotions also, where they had something about how promotions work.
>
> Q. Okay. They would tell you about promotions. Anything else?
>
> A. Other than that, no.

Dep. Palencia, p. 13, 1. 10-16.

What type of a customer service position is this, where there is absolutely no training on customer service and the entire shift is simply an exchange of money for chips. There is no customer service training because it is not part of the position. The Defendant cannot cite to one example of a customer interacting with a cashier, other than exchanging chips. Without something more, there is simply no evidence that the Defendant can present that would permit summary judgment. See Wajcman, 2008 WL 783741, *3 (S.D.Fla. 2008) ("In this case, defendant contends that 'customer relations is an essential part' of the supervisor's job, but the only concrete example it gives of supervisor-customer contact in the cardroom involves the supervisor's role as mediator of customer complaints with the dealers. The record is devoid of any evidence regarding the amount of time which they typically devote to this discrete task, and it is devoid of any competent evidence tending to suggest a quality of interchange between

Palacios, et al. v. Hartman & Tyner, Inc.
Case No.:  0:13-cv-61541-WPD
Plaintiffs' Response to Motion for Summary Judgment

supervisors and customers that is designed or likely to enhance the customer's cardroom experience.")

### III. CONCLUSION

Based upon the all the evidence of the record, Defendant's liability as to the validity of the tip pool is not subject to dispute as to any material facts, and therefore the Defendant's Motion for Summary Judgment must be denied.

Respectfully submitted,

| | |
|---|---|
| WHITELOCK & ASSOCIATES, P.A. | LEVY & LEVY, P.A. |
| 300 Southeast Thirteenth Street | 300 Southeast Thirteenth Street |
| Fort Lauderdale, Florida 33316 | Fort Lauderdale, Florida 33316 |
| Telephone:  (954) 463-2001 | Telephone: (954) 763-5722 |
| Facsimile:   (954) 463-0410 | Facsimile:     (954) 763-5723 |
| E-mail: cjw@whitelocklegal.com | E-mail: chad@levylevylaw.com |
| *Co-Counsel for Plaintiffs* | *Co-Counsel for Plaintiffs* |
| | |
| */s/ Christopher J. Whitelock* | */s/ Chad E. Levy_____* |
| Christopher J. Whitelock | Chad E. Levy |
| Florida Bar No. 067539 | Florida Bar No.  0851701 |

### CERTIFICATE OF SERVICE

**I HEREBY CERTIFY** that on December 1, 2014, I electronically filed the foregoing document with the Clerk of Court using CM/ECF.  I also certify that the foregoing document is being served this day on all counsel of record or pro se parties identified on the attached Service List in the manner specified, either via transmission of Notices of Electronic Filing generated by CM/ECF or in some other authorized manner for those counsel or parties who are not authorized to receive electronically Notices of Electronic Filing.

/s/ Chad E. Levy_____
CHAD E. LEVY

Palacios, et al. v. Hartman & Tyner, Inc.
Case No.:  0:13-cv-61541-WPD
Plaintiffs' Response to Motion for Summary Judgment

## SERVICE LIST

Martin P. McDonnell, Esq.          *Counsel for Defendant*
RUTLEDGE ECENIA, P.A.
P.O. Box 551
Tallahassee, Florida  32302-0551
Telephone:  (850) 681-6788
Facsimile: (850) 681-6515
***Email***:  marty@reuphlaw.com *&*
Vicki@rutledge-ecenia.com