UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No. 13-CIV-61541-BLOOM/Valle

IDANIA PALACIOS, *et al.*,

    Plaintiffs.

v.

HARTMAN AND TYNER, INC.,
d/b/a Mardi Gras Gaming, a Florida
corporation,

    Defendant.

_____/

## ORDER ON DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

    This matter is before the Court upon Defendant Hartman & Tyner, Inc. d/b/a Mardi Gras Gaming's Motion for Summary Judgment, ECF No. [71]. The Court has reviewed the motion, all supporting and opposing filings, and the record in the case, and is otherwise fully advised in the premises. For the reasons that follow, Defendant's Motion for Summary Judgment is granted.

### I. BACKGROUND

    On July 17, 2013, Plaintiff Idania Palacios commenced this action alleging violations of the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201 *et seq.*, on behalf of herself and all other similarly situated employees (collectively, "Plaintiffs") of Defendant Hartman & Tyner, Inc. d/b/a Mardi Gras Gaming ("Defendant"). *See* Compl., ECF No. [1]. Defendant operates a commercial poker room at its casino in Broward County, Florida. *See* Def. SOF, ECF No. [73] at ¶ 3; Pl. SOF in Opp., ECF No. [77] at ¶ 3. At all material times, Plaintiffs were employed by Defendant as poker dealers at the casino. ECF No. [73] at ¶ 1; ECF No. [77] at ¶ 1. Plaintiffs

1

were treated as "tipped" employees, meaning that rather than receive the statutorily-required minimum wage, Plaintiffs' compensation was composed of a reduced hourly wage and tips. *See* Compl., ECF No. [1] at ¶ 8; Def. SOF, ECF No. [73] at ¶¶ 8, 28-29; Pl. SOF in Opp., ECF No. [77] at ¶¶ 8, 28-29.  Thus, Defendant took a "tip credit" of $3.02 per hour against the applicable minimum wage, resulting in a direct hourly wage between $4.23 and $4.91 per hour.  Def. SOF, ECF No. [73] at ¶¶ 8, 28; Pl. SOF in Opp., ECF No. [77] at ¶¶ 8, 28.  Moreover, Plaintiffs were required to contribute 10% of their tops to a "tip pool," which is shared with other poker dealers and poker room employees, including hosts and hostesses, chip runners,[1] floor representatives, and cashiers.  Def. SOF, ECF No. [73] at ¶ 7; Pl. SOF in Opp., ECF No. [77] at ¶ 7.  Certain managerial positions that indisputably did not involve face-to-face interactions with customers, such as shift managers and poker room directors, were not included in the pool.  Def. SOF, ECF No. [73] at ¶ 9; Pl. SOF in Opp., ECF No. [77] at ¶ 9.

This method of tip pooling is common in the Florida poker industry.  Def. SOF, ECF No. [73] at ¶ 10; Pl. SOF in Opp., ECF No. [77] at ¶ 10.  Plaintiffs do not contend that pooling is *per se* violative of the FLSA; rather, Plaintiffs debate the inclusion of cashiers in the tip pool, asserting that this is a non-tipped position and therefore its inclusion in the pool taints the practice.[2]  *See* Opp., ECF No. [76]; *see also* Compl., ECF No. [1] at ¶¶ 11-12.  According to

---

[1] This position was phased out in September 2013.  ECF No. [73] at ¶ 4; Pl. SOF in Opp., ECF No. [77] at ¶ 4.

[2] The Complaint alleges that the tip credit is invalid based on the inclusion of cashiers, as well as "floor representatives."  Compl., ECF No. [1] at ¶ 11.  Defendant seeks summary judgment based on the assertion that both cashiers and floor representatives are "tipped" positions under the FLSA.  *See* Mot., ECF No. [71].  However, Plaintiffs have abandoned their argument that floor representatives qualify as tipped employees, admitting in their responsive filings that the floor representative position involves significant customer service and regularly receive voluntary tips directly from customers, as well as failing to address Defendant's arguments pertaining to that position.  *See* Pl. SOF, ECF No. [73] at ¶¶ 16-23; Def. SOF in Opp., ECF

2

Plaintiffs, because the tip pool includes non-tipped positions, the tip credit does not comport with the FLSA and Plaintiffs are entitled to compensation at the standard minimum wage. *See* Compl., ECF No. [1] at ¶¶ 9-13. In response, Defendant asserts that cashiers are tipped positions, citing to deposition testimony and other sworn testimony indicating that cashiers regularly received tips directly from customers. *See* Def. Ex., ECF No. [72] at 32:4-10, 36:13-37:4, 41:2-10; Maidment Aff., *id.* at 5 ¶ 7, 6 ¶ 9, 9 ¶ 18. Defendant moves for summary judgment on the grounds that cashiers are tipped employees under the FLSA, making the tip pool valid. *See* Mot., ECF No. [71].

## II. SUMMARY JUDGMENT STANDARD

A party may obtain summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The parties may support their positions by citation to the record, including *inter alia*, depositions, documents, affidavits, or declarations. Fed. R. Civ. P. 56(c). An issue is genuine if "a reasonable trier of fact could return judgment for the non-moving party." *Miccosukee Tribe of Indians of Fla. v. United States*, 516 F.3d 1235, 1243 (11th Cir. 2008) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986)). A fact is material if it "might affect the outcome of the suit under the governing law." *Id.* (quoting *Anderson*, 477 U.S. at 247-48). The Court views the facts in the light most favorable to the non-moving party and draws all reasonable inferences in his favor. *See Davis v. Williams*, 451 F.3d 759, 763 (11th Cir. 2006). "The mere existence of a scintilla of evidence in support of the [non-moving party's] position will be insufficient; there must be evidence on which a jury could reasonably find for the [non-movant]." *Anderson*, 477 U.S. at 252. Further, the Court does not weigh conflicting

---

[77] at ¶¶ 16-23. Accordingly, the Court will progress with an analysis solely on the issue of whether a cashier's inclusion corrupts the tip pool.

3

evidence. *See Skop v. City of Atlanta, Ga.*, 485 F.3d 1130, 1140 (11th Cir. 2007) (quoting *Carlin Commc'n, Inc. v. S. Bell Tel. & Tel. Co.*, 802 F.2d 1352, 1356 (11th Cir. 1986)).

The moving party shoulders the initial burden of showing the absence of a genuine issue of material fact. *Shiver v. Chertoff*, 549 F.3d 1342, 1343 (11th Cir. 2008). Once this burden is satisfied, "the nonmoving party 'must do more than simply show that there is some metaphysical doubt as to the material facts.'" *Ray v. Equifax Info. Servs., L.L.C.*, 327 F. App'x 819, 825 (11th Cir. 2009) (quoting *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986)). Instead, "the non-moving party 'must make a sufficient showing on each essential element of the case for which he has the burden of proof.'" *Id.* (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986)). Accordingly, the non-moving party must produce evidence, going beyond the pleadings, and by its own affidavits, or by depositions, answers to interrogatories, and admissions on file, designating specific facts to suggest that a reasonable jury could find in his favor. *Shiver*, 549 F.3d at 1343. Even "where the parties agree on the basic facts, but disagree about the factual inferences that should be drawn from those facts," summary judgment may be inappropriate. *Warrior Tombigbee Transp. Co., Inc. v. M/V Nan Fung*, 695 F.2d 1294, 1296 (11th Cir. 1983).

### III. DISCUSSION

The FLSA sets a federal statutory minimum wage requiring employees to be paid a wage of no less than $7.25 per hour. *See* 29 U.S.C. § 206(a)(1). An employer may reduce the hourly wage of its employees so long as the difference is recovered in tips. *See* 29 U.S.C. § 203(m); *Pellon v. Bus. Representation Int'l, Inc.*, 528 F. Supp. 2d 1306, 1309 (S.D. Fla. 2007) *aff'd*, 291 F. App'x 310 (11th Cir. 2008). Employees whose hourly wage is reduced in this manner are referred to as "tipped employees" under the Act, which specifically defines the term as "any

employee engaged in an occupation in which he customarily and regularly receives more than $30 a month in tips." 29 U.S.C. § 203(t).

The difference between the statutory minimum wage and the amount directly paid to a tipped employee is commonly referred to as a "tip credit." *Pellon*, 528 F. Supp. 2d at 1309; 29 C.F.R. § 531.51. The plain language of § 203(m) indicates that there are two requirements an employer must meet in order to claim a tip credit: (1) the employee must be informed by the employer of the provisions of the subsection; and (2) all tips received by the employee must be retained by the employee.[3] 29 U.S.C. § 203(m); *Garcia v. Koning Restaurants Int'l, L.C.*, No. 12-CV-23629, 2013 WL 8150984, at *4 (S.D. Fla. May 10, 2013) ("If an employer fails to satisfy either of these preconditions, the tip credit may not be claimed, regardless of whether employees suffered actual economic harm as a result." (quotation and citation omitted)); *Goldin v. Boce Grp., L.C.*, 773 F. Supp. 2d 1376, 1379 (S.D. Fla. 2011) ("The FLSA clearly lays out the

---

[3] The relevant portion of § 203(m) reads in its entirety:

> In determining the wage an employer is required to pay a tipped employee, the amount paid such employee by the employee's employer shall be an amount equal to--
> (1) the cash wage paid such employee which for purposes of such determination shall be not less than the cash wage required to be paid such an employee on August 20, 1996; and
> (2) an additional amount on account of the tips received by such employee which amount is equal to the difference between the wage specified in paragraph (1) and the wage in effect under section 206(a)(1) of this title.
>
> The additional amount on account of tips may not exceed the value of the tips actually received by an employee. *The preceding 2 sentences shall not apply with respect to any tipped employee unless such employee has been informed by the employer of the provisions of this subsection, and all tips received by such employee have been retained by the employee, except that this subsection shall not be construed to prohibit the pooling of tips among employees who customarily and regularly receive tips.*

29 U.S.C. § 203(m) (emphasis added).

5

prerequisites an employer must meet in order to claim the tip credit. There are only two: (1) the employer must inform the employee that the employee will be paid the reduced minimum wage; and (2) all tips received by the employee must be retained by the employee." (citation omitted)). If these requirements are not met, then the tip credit is invalid.

Although all tips received by the employee must be retained by the employee, the pooling of tips for later redistribution among the tipped employees qualifies as retention under the Act. *See* 29 U.S.C. § 203(m) (noting that the prerequisites "shall not be construed to prohibit the pooling of tips among employees who customarily and regularly receive tips"). The Code of Federal Regulations confirms that tip pooling is not prohibited:

> Where employees practice tip splitting, as where waiters give a portion of their tips to the busboys, both the amounts retained by the waiters and those given the busboys are considered tips of the individuals who retain them, in applying the provisions of section 3(m) and 3(t). Similarly, where an accounting is made to an employer for his information only or in furtherance of a pooling arrangement whereby the employer redistributes the tips to the employees upon some basis to which they have mutually agreed among themselves, the amounts received and retained by each individual as his own are counted as his tips for purposes of the Act. . . . However, an employer must notify its employees of any required tip pool contribution amount, may only take a tip credit for the amount of tips each employee ultimately receives, and may not retain any of the employees' tips for any other purpose.

29 C.F.R. § 531.34. If the tip pool is distributed among non-tipped employees, then the tips are not "retained by the employee," and the tip credit is invalid. *See Guillory v. PF & B Mgmt., LP*, No. CIV.A. H-11-4377, 2013 WL 1181439, at *5 (S.D. Tex. Feb. 27, 2013) *report and recommendation adopted*, No. CIV.A. H-11-4377, 2013 WL 1182061 (S.D. Tex. Mar. 20, 2013) ("If an employer cannot show that the tip pool was distributed solely among customarily and regularly tipped employees, the employer cannot take a tip credit and must pay its employees the full minimum wage under the FLSA.") (citations omitted); *Chan v. Triple 8 Palace, Inc.*, No. 03

CIV. 6048 (GEL), 2006 WL 851749, at *14 (S.D.N.Y. Mar. 30, 2006) ("In other words, employers are not merely barred from taking the tip credit if they share in the tip pool, but they are barred from taking the tip credit if any person who does not 'customarily and regularly receive tips' shares in the tip pool." (citation omitted)); *Davis v. B & S, Inc.*, 38 F. Supp. 2d 707, 714–15 (N.D. Ind. 1998) ("[T]he employer may still take advantage of the tip credit for employees who participate in a tip pooling agreement, so long as those employees are employees who 'customarily and regularly receive tips'" . . . . (citation omitted)); *see also* Opinion Letter, Fair Labor Standards Act (FLSA), 1997 WL 998047, at *2 (Dep't of Labor Nov. 4, 1997) ("[A]n employer will lose the benefit of the exception from the tip-retention requirement if tipped employees are required to share their tips with employees who do not customarily and regularly receive tips . . . .").

The parties do not take issue regarding whether Plaintiffs were placed on notice of the reduced wages. Rather, the dispute concerns the second requirement: Plaintiffs claim that by including non-tipped employees in the tip pool they did not effectively retain their tips, and, therefore, the tip credit is invalid. Defendant contends that poker room cashiers are tipped employees as a matter of law and that it is entitled to summary judgment as a result. Thus, a singular issue is presented, namely, whether Defendant's poker room cashiers are "tipped employees" as defined by the FLSA.[4]

Defendant contends that the Court need not analyze the other aspects of the cashier's employment, such as whether they perform customer service functions, simply because it is indisputable that they receive in excess of $30 per month in tips, satisfying the definition of "tipped employee" under 29 U.S.C. § 203(t). Plaintiffs counter that this interpretation is too

---

[4] As previously noted, Plaintiffs have abandoned their argument pertaining to whether floor representatives are "tipped employees" under § 203(t).

simplistic.  According to Plaintiffs, if an employee were to qualify as a "tipped individual" solely by way of the fact that they receive in excess of $30 per month in tips, without further inquiry, then that employee's inclusion in the challenged tip pool makes them eligible for "tipped" status because the tip pool itself provides the requisite compensation.  The limited case law on this issue is by no means a model of clarity.

Some courts have recognized that allowing for satisfaction of the $30 per month minimum by tips received from the tip pool is illogical.  In *Chan*, the Southern District of New York found that this narrow reading leads to absurd results and would render the restriction on tip sharing "utterly meaningless."  *Chan*, 2006 WL 851749, at *14 n.22.  At first read, the Sixth Circuit's *Kilgore v. Outback Steakhouse* decision appears to disagree.  In *Kilgore* the Sixth Circuit found that the Act placed no restrictions on the manner in which an employee may satisfy the $30 requirement, noting that those who receive their tips from a tip pool qualify as employees who "receive tips" according to Department of Labor regulations and practices, and that this approach is "consistent with the statutory language, which does not require that an employee directly receive the requisite amount of tips from customers."  *Kilgore v. Outback Steakhouse of Florida, Inc.*, 160 F.3d 294, 301 (6th Cir. 1998) (citing 29 C.F.R. § 531.54).  However, the Sixth Circuit acknowledged the mild circuity of this interpretation, and stressed that inclusion in the tip pool *alone* would not satisfy the definition of tipped employee under § 203(t), as the statute unequivocally requires not only that the employee receive more than $30 a month in tips, but also that the employee work "in an occupation in which he customarily and regularly" receives such compensation.  *See id.*  Based on the statutory language, the Sixth Circuit held that restaurant hosts were engaged in a tipped occupation "because they sufficiently interact with customers in an industry [] where undesignated tips are common."  *See id.*

Therefore, while the Court in *Kilgore* noted that inclusion in the tip pool will satisfy the minimum monetary compensation required for § 203(t) status, it hinted at another requirement: that the employee perform work that involves more than a *de minimus* interaction with customers. *See id.* at 301-02 (distinguishing hosts from employees who have zero to no contact with customers such as dishwashers, cooks, or janitors).

This Court and our sister districts have confirmed the reading of *Kilgore* which allows a court to examine the interaction the employee has with customers. *See Rubio v. Fuji Sushi & Teppani, Inc.*, No. 6:11-CV-1753-ORL-37, 2013 WL 230216, at *2 (M.D. Fla. Jan. 22, 2013) (citations omitted) (noting that "[c]ourts have focused on the extent of an employee's customer interaction as a significant factor in determining whether the employee is a customarily tipped employee"); *Ash v. Sambodromo, LLC,* 676 F. Supp. 2d 1360, 1369-70 (S.D. Fla. 2009) ("Courts determining whether an employee is a tipped employee have focused on the amount of customer interaction."); *Wajcman v. Investment Corp. of Palm Beach*, No. 07-80912-CIV, 2008 WL 783741, at *3 (S.D. Fla. Mar. 20, 2008) (citing *Kilgore v. Outback Steakhouse of Florida, Inc.*, 160 F.3d 294 (6th Cir. 1998)) ("In determining whether an employee is engaged in an occupation that 'customarily and regularly' receives tips for purposes of § 203(t), the focus is properly drawn to the question of whether the employee performs important customer service functions, i.e. does the employee have more than *de minimis* service interaction with customers."). Thus, these courts have focused the on both the quantity and quality of the customer interaction. *See Wajcman*, 2008 WL 783741, at *4.

Some courts, including this one, have gone so far as to state that "[o]nly where employees have no customer contact have they been found to fall outside the definition of tipped employees." *Pellon*, 528 F. Supp. 2d at 1315 (citing *Myers v. Copper Cellar Corp.*, 192 F.3d

9

546, 550 (6th Cir. 1999) (employees performing food preparation with zero customer interaction were not "tipped employees")) (holding that airport skycaps qualify as tipped employees under the FLSA as "the vast majority of [their] time spent at their job directly results in tips or is incidental to and stems from activity that directly results in tips"); *see also Elkins v. Showcase, Inc.*, 237 Kan. 720, 735, 704 P.2d 977, 989 (1985) (bartenders located behind wall and away from customers performing duty similar to non-tipped cooks ineligible for "tipped employee" status). Taken out of context, this view is far too parochial. The inquiry is not simply whether the employee maintains more than a *de minimus* interaction with customers, but rather, as the plain language of § 203(t) requires, the employee must be engaged in an occupation which typically results in the gesture of tipping, receiving in excess of $30 a month in this form of compensation.

According to Plaintiffs, a court is obligated to determine whether the employee performs important customer service functions, not simply whether the employee receives $30 in tips, be it directly or via a tip pool. In support of this contention, Plaintiffs primarily rely on *Wajcman v. Investment Corp. of Palm Beach*.[5]

In *Wajcman*, poker dealers brought claims under the FLSA alleging that casino floor supervisors were inappropriately included in a tip pool. *Wajcman*, 2008 WL 783741, at *1-2. The defendant in *Wajcman* took a position similar to that of Defendant here, arguing that "only those employees who have no customer contact are properly excluded from the definition of tipped employees." *See id.* at *4. In rejecting this contention, the Court opined that at its extreme, this definition would allow any employee to fall under § 203(t) as long as that

---

[5] Plaintiffs also rely on *Chan v. Triple 8 Palace, Inc.* out of the Southern District of New York. As noted, the *Chan* court recognized the irrationality of allowing the tip pool itself to satisfy the $30 requirement and explicitly rejected such an interpretation of the statute. *See* 2006 WL 851749, at *14 n.22. However, the court did not reach the issue presented here.

employee maintained something more than *de minimus* contact with customers, and that permitting these employees to fall into the definition "would render meaningless the statutory requirement that a 'tipped employee' be engaged in an 'occupation' that 'customarily and regularly' receives tips." *Id.* The problem with the defendant's construction was that it was too simplistic; it allowed employees who maintained significant customer interaction to fall within the definition's ambit, regardless of whether they were in a position where tips were common. *See id.* For example, a security detail or bouncer would undoubtedly have substantial customer interface, but not be employed in a position that customarily and regularly receives tips. *Id.* The Court continued, noting that while positions such as these involve significant consumer interaction, they are not in a position involving the "exchange of pleasantries or provision of personal services that ordinarily evokes tipping generosity." *Id.* Thus, the Court refocused the inquiry, indicating that it looked to both the "quantity and quality of the customer interaction." *Id.* Ultimately, the Court found that the defendant had failed to show that there was no genuine issue of material fact because there were disputed issues pertaining to the quality and quantity of supervisor-customer interaction. *Id.* at *4-5.

The submitted evidence clearly supports the assertion that the cashiers receive more than $30 per month independent of the tip pool. Several of Defendant's cashiers have indicated that they regularly receive direct tips from customers, and rarely, if ever, do they leave their shift with less than $10 in tips. *See* Def. Ex., ECF No. [72] at 32:4-10 (estimating that she takes home between $25 and $30 a day in tips), 36:13-37:4 (stating that he has never left work with less than $10 in tips), 41:2-10 (confirming that cashiers have a tip box located at the counter where customers sometimes tip). Additionally, Defendant's human resource director states that "it is customary throughout the gaming industry for customers to give tips directly to [cashiers]" and

11

cashiers "regularly and customarily receive in excess of $30 per month in tips directly from customers," which are primarily received when the customer goes to "cash out" after playing.[6] Def. Ex., Maidment Affidavit, ECF No. [72] at 5 ¶ 7, 6 ¶ 9, 9 ¶ 18. Plaintiffs do not directly refute this evidence, nor do they challenge its accuracy.[7] Instead, Plaintiffs essentially contend that the form of the interaction between cashiers and customers is dispositive on the matter. The Court disagrees.

An inquiry into the nature of the interaction may be relevant to determine tipped status; however, *Wajcman* did not purport to make this a requirement in every case. Plaintiffs' argument, as presented, essentially requires the Court to modify the language of the statute, adding a customer service requirement. The statute straightforwardly defines a tipped employee as one who is "engaged in an occupation in which he customarily and regularly receives more than $30 a month in tips." 29 U.S.C. § 203(t). No requirement of customer service is involved. Whether a position requires customer service *may* be indicative of whether that position is

---

[6] Defendant's human resources director also claims to have reviewed the pay records for each plaintiff, noting that "[e]ach Plaintiff always received more than $30.00 a month in tips in any month in which they were employed as a Poker Dealer for [Defendant]." ECF No. [72] at 11 ¶ 24. However, no pay records are included with the motion.

[7] Pointing to a purported Department of Labor report, Plaintiffs conclude that the Department "has already determined that cashiers locked behind a cage are not to be included in a tip-pool." *See* Pl. SOF, ECF No. [77] at ¶ 11; *see also* Opp., ECF No. [76] at 8-9. Plaintiffs request that the Court take judicial notice of this case-dispositive fact based on the alleged report. Fed R. Civ. P. 201(b) provides that a court may take judicial notice of a fact that "is not subject to reasonable dispute" because it is either (1) "generally known within the trial court's territorial jurisdiction" or (2) "can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." Further, Rule 201(d) states that a court "must take judicial notice if a party requests it and the court is supplied with the necessary information." Fed. R. Civ. P. 201(d). At no point does the document provided identify itself as an official Department of Labor report. Further, even if the report was more identifiable, it would still not necessitate judicial notice, as the report does not clearly indicate what Plaintiff asserts, namely, that the Department of Labor has made an official determination of whether cashiers are tipped employees for FLSA purposes. Accordingly, the Court respectfully declines to take judicial notice of any facts contained in the document.

tipped, however, it is not dispositive on the matter. It is simply a relevant fact to consider. Under circumstances where the challenged position's tips stem from the tip pool itself, or where no evidence of direct tipping has been presented, a Court may need to go further in order to ascertain whether the position is one which customarily and regularly receives tips. However, where the person is, as a matter of undisputed fact, tipped by patrons, the Court need not look further because the employment position is indisputably one involving the customary and regular receipt of tips, simply by virtue of the fact that tipping routinely occurs. It belies logic that an employee having next to no customer interaction would regularly receive tips from customers.

The case law presented merely attempts to resolve an issue not presented in this case, that is, situations where direct tips from customers do not occur. Moreover, *Wajcman* does not necessitate the conclusion that Plaintiffs seek as the case is factually inapposite. In *Wajcman*, there was no indication that the employees in the challenged position received direct tips from customers, and no evidence was presented on this point. 2008 WL 783741, at *1-2, 4. Instead, the defendant in *Wajcman* sought to focus on the customer interactions to demonstrate compliance with § 203(t). *See id.* at *3. In light of the utter lack of evidence regarding the quality of customer interaction and any other evidence of tipping, the court found that summary judgment was not warranted because there was a disputed genuine issue of material fact pertaining to the quantity and quality of supervisor-customer interaction with respect to the challenged employment position. *Id.* at *3-5 (noting that "there is no evidence tending to show that the floor supervisors were engaged in services on the floor that were a likely subject of tipping"). On the contrary, the record here is not so sparse. Defendant has submitted substantial evidence indicating that cashiers regularly received tips directly from customers, and, most critically, Plaintiffs do not dispute the fact that cashiers actually received tips directly from

13

Defendant's customers. Based on the admitted evidence, the Court finds that Defendant's cashiers are "engaged in an occupation in which [they] customarily and regularly receives more than $30 a month in tips" because they received tips in excess of $30 per month from patrons, and are, therefore, "tipped employees" under 29 U.S.C. § 203(t).

Plaintiffs' further attempts to inject dispute are unavailing. Plaintiffs assert that cashiers are "human ATM machines" who provide little to no customer service function, but simply sit in a locked cage all day. The Court is not persuaded that because cashiers are in a cage, for obvious security reasons, that it is impossible to have customer interaction. The terminal inquiry is whether the employee is engaged in a position where he or she customarily receives compensation in the form of tips that meets the minimum monetary threshold of $30 per month. The evidence submitted leads to the inescapable conclusion that cashiers "customarily and regularly" receive tips in excess of $30 a month, as is required by the FLSA's definition. *See* 29 U.S.C. § 203(t). Plaintiffs do not dispute the fact that Defendant's cashiers receive tips from customers. The statute does not explicitly require that a tipped employee be primarily responsible for supplying customer service. Although courts have looked to employee-customer interaction to determine if the relationship is one that commonly leads to the conveyance of tips, where there is undisputed evidence that an employee directly received tips from patrons, the level of customer service provided may ultimately be irrelevant.

## IV. CONCLUSION

Defendant's cashiers are employees "engaged in an occupation in which [they] customarily and regularly receive[] more than $30 a month in tips," and are therefore "tipped employees" under the FLSA. While there may remain a question as to the level of customer service that cashier's provide, this factual dispute is not a material one given the undisputed fact

that the cashiers receive in excess of $30 per month directly from Defendant's patrons. Because cashiers are tipped employees, and Plaintiffs have abandoned their argument pertaining to floor representatives by failing to respond to those arguments, the Court finds that Defendant's tip pool is not in violation of the Act.

For these reasons, it is hereby **ORDERED AND ADJUDGED** that Defendant Hartman & Tyner, Inc. d/b/a Mardi Gras Gaming's Motion for Summary Judgment, **ECF No. [71]**, is **GRANTED**.

The Defendant is directed to submit a proposed final judgment no later than December 26, 2014.

**DONE AND ORDERED** in Fort Lauderdale, Florida, this 15th day of December, 2014.

_____
**BETH BLOOM**
**UNITED STATES DISTRICT JUDGE**

Copies to:
Counsel of Record